UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

BLANK PRODUCTIONS, INC. and
ROBERT BLANK,

                Plaintiffs,

    -against-                                                                    11 Civ. 7927 (KMW)
                                                                                                    OPINION & ORDER
WARNER/CHAPPELL MUSIC, INC., and
DOES 1 through 10, inclusive,

                Defendants.
--------------------------------------------------------------X
WOOD, U.S.D.J.:

       Plaintiffs, Blank Productions, Inc. and Robert Blank (collectively, the "Blank parties"),

brought this copyright action against Defendants Warner/Chapell Music, Inc. ("WCM"), seeking

a declaratory judgment that their use of various musical works to create karaoke recordings did

not violate WCM's copyright in those works.  WCM responded with three counterclaims,

alleging that the Blank parties had committed direct, vicarious, and contributory copyright

infringement by their unlicensed use of copyrighted materials.  Presently before the Court is the

Blank parties' partial motion to dismiss WCM's counterclaims for contributory and vicarious

copyright infringement to the extent those claims relate to unspecified recordings and

unidentified third-party manufacturers.  For the following reasons, the Court DENIES the

motion.

    **I.**    **BACKGROUND**

       The following summary is drawn from WCM's Amended Answer and Counterclaims,

and is accepted as true for purposes of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

WCM, a subsidiary of Warner Music, owns or controls the copyrights to millions of musical works.  (First Am. Answer & Countercls., at 6 ¶ 1 [Dkt. 24] ("Countercls.")).  Blank Productions, "the most prolific creator[] of unlicensed karaoke recordings in the country," uses copyrighted musical works to create karaoke recordings.  (*Id.* at 7 ¶ 17).  It uses these copyrighted materials, including instrumental recordings, voice recordings, and lyric sheets, to solicit, advertise, distribute, and sell recordings to karaoke companies and other consumers on its website, which claims Blank Productions to be the "most comprehensive source for sound-alikes and re-records in the world."  (*Id.* at 6 ¶¶ 8-9).   Blank's website features an interactive online catalog identifying the many song files that Blank Productions has re-recorded over a number of years. (*Id.* at 6 ¶ 10).[1]

When a third party requests a karaoke recording from Blank Productions, Blank will either provide a pre-existing recording of the song from its catalog, or, if the song is not yet in the catalog, Blank will record the requested song.  (*Id.* at 8 ¶ 25).  One purchaser of Blank Productions' karaoke recordings, Audio Stream (not a party to this action), used Blank's recordings to create its "All Star Karaoke" brand of karaoke disks.  (*Id.* at 8 ¶ 22).  Audio Stream admits receiving 60% of the compositions for "All Star Karaoke" from Blank Productions.  (*Id.* at 8 ¶ 24).  According to invoices, Audio Stream has purchased at least eight of WCM's copyrighted works from Blank Productions, including some of WCM's most popular and valuable songs—for example, the 2011 Grammy winner for Song of the Year, "Need You Now" by Lady Antebellum.  (*Id.* at 9 ¶ 29).  Although WCM does have a license agreement with Audio Stream, WCM has never authorized Blank Productions to use its copyrighted works, nor has

---

[1] Users must log in to see Blank's full catalog of available recordings.  *See* http://blankproductions.com/login.asp (last visited Dec. 20, 2012) ("We are the largest producers of Source Cues (custom re-records or soundalikes) in the world, with over 30,000 tracks immediately available. Log in or request access to get started searching our database.").  WCM has requested this catalog in discovery.

Blank otherwise obtained a license to do so.  (*Id.* at 7 ¶¶ 11-13).  WCM alleges that Blank

Productions has infringed numerous other copyrights beyond the eight songs identified; it has

provided a list of six hundred and five musical works it believes are likely to have been

infringed.  (Countercls. at 10 ¶¶ 31-32).  WCM also alleges that Blank has supplied unlicensed

recordings to parties other than Audio Stream through its website.  (*Id.* at ¶ 33).

On October 10, 2011, WCM contacted Blank and threatened action for copyright

infringement and unfair competition.  (Compl. ¶13 [Dkt. 1]).  In response, the Blank parties filed

this action for a declaratory judgment of non-infringement, advancing two principal arguments.

First, the Blank parties contend that their use of WCM's copyrighted works is covered by Audio

Stream's license with WCM on a "work for hire" basis.  Under this theory, Audio Stream's

license agreement with WCM includes authorization for third parties to use the works as well.

(*Id.* at ¶ 18(a)-(d)).  In the alternative, Blank argues that creating karaoke recordings constitutes

"fair use" of WCM's copyrights.   (*Id.* at ¶ 18(f)).

WCM filed an Answer and Counterclaims, later superseded by an Amended Answer and

Counterclaims, which alleges that the Blank parties engaged in direct, contributory, and

vicarious copyright infringement when it recorded and sold compositions in which WCM held

copyright interests.  The Blank parties now move to dismiss WCM's counterclaims for

contributory and vicarious copyright infringement to the extent those claims relate to unspecified

recordings and third-party manufacturers other than Audio Stream.  (Mem. of Law in Supp. of

Pls.'s Mot. for Partial Dismissal [Dkt. 28]).  WCM, for its part, argues that it has provided

enough facts to satisfy the pleading requirements of Federal Rule of Civil Procedure 12(b)(6).

(Def./Counter-Claimaint's Mem. of Law in Opp. [Dkt. 29]).

## II.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," a district court must dismiss the complaint. *Twombly*, 550 U.S. at 570.  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted).  By contrast, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.      ANALYSIS

Secondary liability for copyright infringement may be imposed where a party has not committed direct infringement, but nonetheless played a significant role in direct infringement committed by others. *Arista Records LLC v. Lime Group* LLC, 784 F. Supp. 2d 398, 422 (S.D.N.Y. 2011) (Wood, J.).  A party commits contributory copyright infringement when it "intentionally induc[es] or encourage[s] direct infringement" by a third party, and infringes vicariously "by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 930 (2005) (internal citations omitted).  Although the Copyright Act did not expressly contemplate liability based on a third party's infringement, these doctrines of secondary liability "emerged from common law principles and are well established." *Id.*  Indeed, "it may be impossible to enforce rights in the

protected work effectively against all direct infringers" absent a cause of action for secondary

infringement, especially when "a widely shared service or product is used to commit

infringement." *Id.* at 929-30.  The Court ultimately concludes that WCM has alleged sufficient

facts to state a claim for contributory and vicarious copyright infringement.

      A.  Contributory Copyright Infringement

To state a claim for contributory copyright infringement, a plaintiff must allege that a

party "with knowledge of the infringing activity[] induce[d], cause[d], or materially contribute[d]

to the infringing conduct of another." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117-18 (2d

Cir. 2010) (internal citation omitted).  In other words, liability exists "if the defendant engages in

personal conduct that encourages or assists the infringement." *Id.* at 118 (internal citations

omitted).  The standard for knowledge is objective. *Id.*; *see also Gershwin Publ'g Corp. v.*

*Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162-63 (2d Cir. 1971) (affirming finding of

contributory liability where defendant had knowledge of infringement, the "ability to police the

infringing conduct," and "derived substantial financial benefit" from the infringement).

The facts alleged state a plausible claim that the Blank parties have committed

contributory copyright infringement.  WCM alleges that the Blank parties' business, supported

by its website, provides karaoke recordings to third parties.  The Blank parties use copyrighted

musical works, including works to which WCM holds the copyrights, as the primary source

material for creating karaoke recordings.  By distributing, marketing, and selling these

recordings, the Blank parties provide third parties with the materials to commit direct

infringement and must know that such infringement is occurring; indeed, the purpose of selling

karaoke recordings is undoubtedly for the purchaser to use them.  Given these allegations, the

Court finds WCM has adequately stated a claim for contributory infringement.  *See Fonovisa,*

*Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (finding provision of site and

facilities where infringement occurs to constitute active participation sufficient to establish

contributory liability).

B.  Vicarious Copyright Infringement

Vicarious copyright infringement exists where a defendant profits from direct

infringement "while declining to exercise the right to stop or limit it."  *Grokster*, 545 U.S. at 913;

*see also Gershwin*, 443 F.2d at 1162 ("[O]ne may be vicariously liable if he had the right and

ability to supervise the infringing activity and also has a direct financial interest in such

activities.").  Unlike contributory infringement, knowledge is not required to show vicarious

infringement; the only requirements are direct financial benefit and the ability to control third

parties' infringing conduct.  *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156

(S.D.N.Y. 2009) (Baer, J.).

WCM has alleged sufficient facts to support its claim for vicarious infringement.  First,

the Blank parties have the right and ability to control third parties' infringing conduct.  A party

has control where it has "both a legal right to stop or limit the directly infringing conduct, as well

as the practical ability to do so."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th

Cir. 2007).  Blank creates karaoke recordings using copyright works to which it does not hold a

license, and then sells these recordings to downstream users.  It advertises its recordings online,

and its website features an online catalog to help purchasers find recordings by song, publisher,

timing, key and lyrics.  (Countercls. at ¶ 10).  In short, the Blank parties have total control over

the contents of their catalog and the sales of infringing recordings to third parties.

The allegations also state a plausible claim that the Blank parties profit from infringement

by third parties.  Direct financial benefit exists where there is "a causal relationship between the

infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson*, 189 F.

Supp. 2d 1051, 1079 (C.D. Cal. 2002), *rev'd on other grounds*, 357 F.3d 1072 (9th Cir. 2004).

The financial benefit need not be tied directly to the sales of infringing goods. *Lime Group LLC*,

715 F. Supp. 2d at 518.  Proof of financial benefit exists where the availability of infringing

materials acts as a "draw" for customers. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004,

1023 (9th Cir. 2001); *see also Arista Records*, 633 F. Supp. 2d at 156-57.  The infringing

materials need not be "the primary, or even a significant, draw—rather, it need only be *'a'*

draw."  *Arista Records*, 633 F. Supp. 2d at 157 (internal citation omitted); *see also Capitol*

*Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) (Pauley, J.).

WCM's allegations indicate that the Blank parties derive financial benefit from third

parties' infringement.  Most simply, the Blank parties are compensated for selling karaoke

recordings created using copyrighted materials, and profit directly from their sale.  Moreover, the

Blank parties' website, declaring itself the "most comprehensive source for sound-alikes and re-

records in the world," uses infringing materials (the karaoke recordings) to draw customers.

Given these allegations, WCM has stated a plausible claim that the Blank parties have committed

vicarious copyright infringement.

C.  Pleading Requirements for Third Parties

The Blank parties' primary argument in support of its partial motion to dismiss is that

WCM has failed to adequately plead the elements of direct infringement with respect to third

parties.  (Letter dated June 18, 2012, at 4 [Dkt. 30] ("Blank Letter")).  According to the Blank

parties, a claim for secondary liability can survive a motion to dismiss only if the plaintiff pleads

all of the elements of direct copyright infringement with respect to each alleged third party

infringer.  Because WCM's Counterclaims mention only Audio Stream and the eight songs

7

WCM knows to have been infringed, the Blank parties contend that WCM's motion does not meet the requirements of Rule 12(b)(6).

These arguments are without merit.  First, taking WCM's allegations as true, it is plausible that the Blank parties committed contributory and vicarious infringement; the entire business model of karaoke recordings is premised on selling the infringing works to third parties for profit.  This claim is plausible even without specifically identifying *which* third parties have infringed or exactly which songs have been copied; Blank Productions is likely selling its product to more parties than Audio Stream.  WCM will identify specific end users and songs through discovery.

Second, the Court agrees that *recovery* under a secondary liability theory requires proof of direct infringement by specific third parties.  *See Lime Group LLC*, 784 F. Supp. 2d at 423 (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005)).  However, the Blank parties have not cited—and the Court has not found—any authority supporting the Blank parties' contention that a party is required to *plead* the elements of direct infringement with respect to each third party infringer in a secondary liability case.  Further, selling infringing materials to third parties, identified or otherwise, is frequently the basis for secondary liability claims.  *See, e.g.*, *Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62-63 (1911) (finding secondary liability for advertising infringing films with the expectation that third parties would reproduce them); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 420, 435 (1984) (addressing claim of secondary liability on the merits where petitioner had not sued downstream users of allegedly infringing product).

In sum, the allegations presented by WCM are sufficient to conclude that the Blank parties knowingly induced others to infringe and profited from that infringement. In light of this, the Court rejects the Blank parties' arguments and denies its partial motion to dismiss.

## IV.   DISCOVERY ISSUES

On November 12, 2012, WCM contacted the Court to request assistance in resolving a discovery dispute; namely, the Blank parties' failure to comply with any of WCM's discovery requests. (Letter dated Nov. 12, 2012 [Dkt. 31]). Although the Court initially scheduled a conference and ordered the Blank parties to comply with WCM's discovery requests, the Court later stayed its order because the relevance of the materials sought appeared to depend upon the Court's resolution of the instant partial motion to dismiss.[2] (Order dated Nov. 26, 2012 [Dkt. 34]). Given that this Opinion conclusively rejects the Blank parties' partial motion to dismiss, the Blank parties are hereby ordered to file detailed responses to WCM's discovery requests, with a copy to the Court, by January 18, 2013.

## V.   CONCLUSION

For the foregoing reasons, the Blank parties' partial motion to dismiss is denied. The Blank parties are hereby ordered to file detailed responses to WCM's discovery requests, with a copy to the Court, by January 18, 2013.

SO ORDERED.

Dated: New York, New York
        January 3, 2013

Kimba M. Wood
United States District Judge

---

[2] WCM submitted "supplemental authority" opposing the Court's decision to issue a stay (Dkt. 35), and the Blank parties responded, (Letter dated Dec. 7, 2012). Given that this Opinion lifts the stay, the Court does not consider either party's submissions on this point.